UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 18-10206-CV-KING
(17-10009-CR-KING)
MAGISTRATE JUDGE REID

RICHARD KARL MORK,

     Movant,

     v.

UNITED STATES OF AMERICA,

     Respondent.

_____/

## REPORT OF MAGISTRATE JUDGE

### I.    Introduction

This matter is before the Court on the *pro se* Movant's amended motion to vacate, filed pursuant to 28 U.S.C. § 2255, attacking the constitutionality of his conviction and sentence entered following a guilty plea in Case No. 17-10009-CR-King. [CV-ECF No. 8].[1] Movant was convicted of three counts of encouraging and inducing an alien to come to enter and reside in the United States, in violation of 18 U.S.C. § 1324(a)(1)(A)(iv), and one count of aiding and assisting certain aliens to enter the United States, in violation of 18 U.S.C. § 1327. [*See* CR-ECF No. 107].

---

[1] This Report uses the citation "CR-ECF No. ___" to reference docket entries in the underlying criminal Case No. 17-10009-CR-King." This Report uses the citation "CV-ECF No. ___" to reference docket entries in the instant federal habeas case.

This cause has been referred to the Undersigned for consideration and report pursuant to 28 U.S.C. § 636(b)(1)(B), S.D. Fla. Admin. Order 2019-2, and Rules 8 and 10 Governing Section 2255 Proceedings in the United States District Courts.

The Court has reviewed Movant's motion with supporting memorandum [CV-ECF No. 8]; all pertinent portions of the underlying criminal file; the government's response [CV-ECF No. 12]; Movant's reply [CV-ECF No. 13]; and the Presentence Report (PSR), addendum, and statement of reasons (SOR).

For the reasons discussed below, the § 2255 motion should be DENIED.

## II.   Claims

Construing the § 2255 motion liberally as afforded *pro se* litigants, pursuant to *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Movant raises one ineffective assistance of counsel claim: counsel waived Movant's right to appeal without consulting with him. [ECF No. 8 at 4-5].

Movant seeks to have his sentence vacated, reimpose the same term, and allow him to file a belated appeal. [*Id*. at 21].

## III.   Relevant Procedural History

### A.  Indictment, Guilty Plea, and Plea Hearing

Movant, along with three co-defendants, was charged in a fourteen-count Indictment with ten counts of encouraging and inducing aliens to enter the United States and one count of aiding and assisting certain aliens to enter the United States.

2

[CR-ECF No. 9]. For each of Counts 1 through 10, § 1324 violations, Movant was subject to a maximum five-year term of imprisonment. [*Id*. at 7]. For the § 1327 violation, he faced a maximum ten-year prison term. [*Id*.].

There is no written plea agreement in this case. However, in a factual proffer supporting his guilty plea Movant confirmed that United States Customs and Border Protection (CBP) officers were conducting routine patrols approximately two nautical miles from Tavernier, Florida, when they located a disabled vessel in Tavernier Creek. [ECF No. 69 at 1]. The officers observed two jet skis approach the boat each carrying gas tanks. [*Id*.]. About thirty minutes later, the officers boarded the vessel and determined Movant was the owner and operator. [*Id*.]. He had transported ten aliens from the Bahamas to Tavernier Creek who were coming to the United States illegally, and knew of or acted in reckless disregard of their lack of legal immigration status. [*Id*.]. Movant acknowledged in the factual proffer that at least one of the aliens was an "unaccompanied minor, B.L.B., a citizen of Haiti." [*Id*. at 2]. In a post-*Miranda* interview, Movant confirmed he had departed from Bimini, Bahamas with the aliens on his vessel, intending to bring them to the United States knowing they were "illegal aliens," ran out of fuel, and asked the persons on the jet skis to bring him fuel. [*Id*. at 3].

Movant appeared for his plea hearing represented by counsel and before a magistrate judge by consent. [CV-ECF No. 12-1 at 3-4]. During his plea colloquy,

3

Movant explained his educational background, denied being treated for mental illness, denied being under the influence of any drugs or alcohol, and confirmed he had reviewed all the discovery with his lawyer. [*Id*. at 4-5]. Movant confirmed he understood the charges and the maximum penalties. [*Id*. at 5-6]. Movant affirmed that he wanted to plead guilty, spoke with his counsel about the decision, stated he was satisfied with counsel's representation, and that there were no promises made in exchange for his plea. [*Id*. at 7]. Movant stated he was pleading guilty because he was guilty and confirmed he had signed the factual proffer, which was read to him in open court. [*Id*. at 7-10]. Movant confirmed he understood he was waiving his trial rights as well as certain civil liberties. [*Id*. at 7-8]. Movant understood he was waving certain civil rights as a result of his guilty plea. [*Id*. at 11]. Movant confirmed he and his counsel reviewed the sentencing guidelines in his case and understood that an advisory guideline sentence could not be determined until after the presentence report was completed and opportunity to challenge the recommendations had passed. [*Id*. at 11-12]. Movant understood he was waiving his right to trial, as well as the rights of the accused, and then pled "guilty." [*Id*. at 13-14]. The magistrate judge recommended that Movant was fully competent and capable, was entering a knowing and voluntary plea supported by an independent basis in fact, and recommended he be adjudicated guilty. [*Id*.; *see also* Report and Recommendation of the magistrate judge CR-ECF No. 73].

4

Within Movant's presentence report (PSR), pursuant to U.S. Sentencing Guidelines Manual § 3B1.3 (U.S. Sentencing Comm'n 2016) (U.S.S.G.), an adjustment was warranted for his role as the captain of the vessel -- who smuggled a total of eleven illegal immigrants, two of whom were unaccompanied minors. [PSR ¶ 25]. Pursuant to U.S.S.G. § 2L1.1(a)(2), Movant's base offense level was 23 because the § 1327 violation involved an alien previously deported following an aggravated felony conviction. [PSR ¶ 23]. He received a three-level increase pursuant to § 2L1.1(b)(2)(A) because the offense involved smuggling or harboring eleven unlawful aliens. [PSR ¶ 32]. Because the offense involved the smuggling of an unaccompanied minor, Movant received a four-level increase under U.S.S.G. § 2L1.1(b)(4). Movant received a two-level role adjustment for using a special skill in a manner that significantly facilitated the commission or concealment of the offense. [PSR ¶ 35]. Accordingly, Movant's adjusted offense level was 32. [ECF No. 37]. For his acceptance of responsibility, Movant received a two-level decrease pursuant to § 3E1.1(a) and a one-level decrease pursuant to § 3E1.1(b). [PSR ¶¶ 39, 40]. Thus, Movant's total offense level was 29. [PSR ¶ 41]. Movant had two criminal history points for a 2013 case involving driving under the influence with property damage, which established a criminal history category of II. [PSR ¶¶ 56, 57]. With a total offense level of 29 and a criminal history category of II, the guideline imprisonment range is 97 to 121 months, a three-year term of supervised release (all

to run concurrently), a special assessment of $400, and a fine range of $30,000 through $300,000. [PSR ¶¶ 103, 105, 109].

Counsel, on Movant's behalf, filed objections to the presentence report requesting a variance from the guidelines. Specifically, counsel argued that a Category II overrepresented Movant's criminal history; and he should be sentenced as a Category 1 offender with consideration that, at 65 years old, it was unlikely he would reoffend. [CR-ECF No. 91 at 2-3]. Counsel also argued against the minors being referred to as "unaccompanied minors" since there were no witness statements or other evidence to support the allegation, and against the special skill assessment because Movant had no special training or licensing regarding the operation of the boat. [*Id*. at 3-4]. Counsel also filed supplemental objections. [ECF No. 101].

## B. Sentencing and Final Judgment

On October 18, 2017, Movant appeared for his sentencing hearing represented by counsel. [CV-ECF No. 12-4]. Counsel confirmed that he and Movant had reviewed and discussed the PSR together. [*Id*. at 5]. Agent Jacobs testified for the government that operating a vessel is more difficult than operating a car because of the differences in mechanical controls and signaling, as well as other conditions including currents, weather, avoiding grounding, and the ability to read channel markers. [*Id*. at 12-13]. Agent Jacobs explained the circumstances leading up to the CBP's interception of Movant's vessel, the inspection of it, and the aliens found on

6

board. [*Id*. at 14-16]. Agent Jacobs explained the unaccompanied minors were turned over to Krome for detention and then taken to a hotel as a matter of routine. [*Id*. at 16]. All aliens were interviewed but none claimed the children; and there were no relatives were on board. [*Id*.]. According to Agent Jacobs, the minor, "BL," from Haiti was transferred to the Immigration Passport Center in Massachusetts and filed for residency with the help of his stepmother there, but neither of the parents' names were the same as anyone else on the vessel. [*Id*. at 17]. The last known whereabouts of the parents were in New York City and Massachusetts. [*Id*. at 18]. As to the other minor, from the Bahamas, Agent Jacobs testified that the CBP told her that he was also unaccompanied. [*Id*. at 18].

According to Agent Jacobs, Movant made a post-*Miranda* statement explaining that "he was approached by a man in Bimini who asked him to take the minors to the United States so they may be reunited with their parents." [*Id*. at 19]. Movant also told her that "he was a charter boat captain" and had "just renewed his cruising permit in Bimini." [*Id*. at 19-20]. She also testified that the two other men who were detained in this case said "they had been working on the boat to outfit [it] for carrying -- ferrying passengers for charters." [*Id*. at 20]. On cross examination, Agent Jacobs admitted that she learned Movant did not have a captain's license. [*Id*. at 21-22].

Counsel reiterated his objections to the PSR. [*Id*. at 26-32, 35-36]. The court determined that the government had established that one of the minors was unaccompanied, which supported the four-level enhancement, especially in light of Movant's own statements. [*Id*. at 36-37]. It also found that Eleventh Circuit case law supporting a finding that the skill involved in managing a vessel from the Bahamas to the Florida Keys, with twelve people on board, met the criteria for the two-level role enhancement. [*Id*. at 37-38]. *See United States v. Suarez*, 601 F.3d 1202, 1219 (11th Cir. 2010). Also, the court found that the PSR correctly categorized Movant as a Category II offender. [*Id*. at 39].

Accordingly, the court determined Movant's offense level was 29; with a criminal history category of II, the guideline range was 97 to 121 months. [*Id*. at 41]. Movant made a statement admitting his guilt, described his personal history, and expressed remorse. [*Id*. at 43-45]. Counsel sought a sentence below the guidelines. [*Id*. at 45-50]. The court considered the 18 U.S.C. § 3553 sentencing factors, granted the variance, and sentenced Movant to a total of 72 months in prison -- twenty-five months less than the low end of the guidelines. [*Id*. at 52-55]. There were no objections to the sentence. [*Id*. at 56]. The court then advised Movant that he had the right to appeal his sentence. [*Id*. at 57]. The remaining counts were dismissed. [*Id*. at 58]. At no time during the hearing did counsel waive any right to appeal.

8

Movant did not appeal his sentence; therefore, his conviction became final fourteen days later, on November 1, 2017, when the time to file an appeal expired. Accordingly, Movant had one year, until November 1, 2018, to file the instant habeas petition.

Movant timely filed his initial motion to vacate on **October 1, 2018**, followed by an amended motion. [ECF Nos. 1, 8].

### IV.     Threshold Issue – Timeliness

The parties correctly agree Movant's motion is timely filed.

### V.     Applicable Law

#### A. *Standard of Review of Section 2255 Motions*

Section 2255 states in relevant part that "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution . . . may move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255.

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral

attack. *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n. 8 (11th Cir. 2011). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent."

The Eleventh Circuit promulgated a two-part inquiry that a district court must consider before determining whether a movant's claim is cognizable. First, a district court must find that "a defendant assert[ed] all available claims on direct appeal." *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994). Second, a district court must consider whether the type of relief the movant seeks is appropriate under § 2255. This is because "[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Lynn*, 365 F.3d at 1232-33 (quoting *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988) (internal quotations omitted)).

10

If a court finds a claim under § 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255. To obtain this relief on collateral review, a petitioner must "clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982) (rejecting the plain error standard as not sufficiently deferential to a final judgment). Under § 2255, unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the court shall "grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."

### B. Ineffective Assistance of Counsel Principles

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate both (1) that counsel's performance was deficient, and (2) a reasonable probability that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984); *Harrington v. Richter*, 562 U.S. 86, 104 (2011). If the movant cannot meet one of *Strickland's* prongs, the court does not need to address the other prong. *Strickland*, 466 U.S. at 697.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted);

*Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000). To establish prejudice, the movant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010). A defendant, therefore, must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687).

It is beyond dispute that habeas petitioners and movants bear the burden of proof in habeas proceedings. *Blankenship v. Hall*, 542 F.3d 1253, 1270 (11th Cir. 2008); *Hill v. Linaham*, 697 F.2d 1032, 1036 (11th Cir. 1983). *See also* 28 U.S.C. § 2255(b), (e); Rule 2 and 4 of the Rules Governing Section 2255 Cases. This axiom is so well-settled that *Strickland* itself placed the burden of proof on habeas litigants, who, like Movant, seek to invoke the Sixth Amendment doctrine. *See generally Strickland*, 466 U.S. at 695-96; *Shiver v. United States*, 619 F. App'x 864, 865 (11th Cir. 2015). Thus, by requiring habeas litigants to bear the burden of showing

constitutional error, criminal proceedings are treated as "valid until proven otherwise." *Occhicone v. Crosby*, 455 F.3d 1306, 1310 (11th Cir. 2006).

In fact, federal courts regularly deny ineffective assistance of counsel claims on the basis that the allegations are too general, too conclusory, or too vague to warrant relief. *See, e.g., Price v. Allen*, 679 F.3d 1315, 1325 (11th Cir. 2012) (reaching this conclusion in a § 2254 context). Denying on this basis is appropriate because, unlike the "notice pleading" standard authorized under Fed. R. Civ. P. 8, a "heightened pleading" requirement exists in § 2254 and § 2255 proceedings. *See Borden v. Allen*, 646 F.3d 785, 810 (11th Cir. 2011). To meet this heightened pleading standard, of course, the habeas petition or motion to vacate must be specific on factual matters. *See id*. Bare, conclusory, allegations of ineffective assistance do not satisfy *Strickland. See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320 (11th Cir. 2012); *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) ("conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding.").

### C. Guilty Plea Principles

It is well settled that before a trial judge can accept a guilty plea, the defendant must be advised of the various constitutional rights he is waiving by entering such a plea. *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). Since a guilty plea is a waiver of substantial constitutional rights, it must be a voluntary, knowing, and intelligent

13

act done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. *Brady v. United States*, 397 U.S. 742, 748 (1970). To be voluntary and knowing, (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea. *United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005) (table); *United States v. Mosley*, 173 F.3d 1318, 1322 (11th Cir. 1999).

After a criminal defendant has pleaded guilty, he may not raise claims relating to the alleged deprivation of constitutional rights occurring prior to the entry of the guilty plea, but may only raise jurisdictional issues, *United States v. Patti*, 337 F.3d 1317, 1320 (11th Cir. 2003), attack the voluntary and knowing character of the guilty plea, *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992), or challenge the constitutional effectiveness of the assistance he received from his attorney in deciding to plead guilty, *United States v. Fairchild*, 803 F.2d 1121, 1123 (11th Cir. 1986).

To determine that a guilty plea is knowing and voluntary, a district court must comply with Rule 11 and address its three core concerns: "ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." *Id*.; *see also, United States v. Frye*, 402 F.3d 1123, 1127 (11th Cir. 2005) (*per curiam*). In other words, a

14

voluntary and intelligent plea of guilty made by an accused person must therefore stand unless induced by misrepresentations made to the accused person by the court, prosecutor, or his own counsel. *Brady v. United States*, 397 U.S. 742, 748 (1970).

Courts apply a "strong presumption" that statements made by a defendant during a change of plea colloquy are true. "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988).

## VI.    Discussion

Movant claims that counsel was ineffective for failing to consult with him before waiving his right to appeal. Movant asserts that at the sentencing hearing, counsel told the court that Movant would not appeal. Because counsel did not consult with Movant beforehand, counsel "violated his constitutionally imposed duty to consult with the defendant about an appeal." [*Id*. at 14-15]. Movant claims that he would have otherwise been able to raise at least two issues on appeal: (1) the sentencing judge erred in imposing the four-level enhancement under U.S.S.G. § 2L1.1(b)(4) because the government's agents could not testify that the two minors were unaccompanied and (2) the two-level special skill enhancement under U.S.S.G. § 3B1.3 was error he was not a licensed boat captain and "it takes more skill to drive a car … than it does to drive a boat in open water." [*Id*. at 17-18]. Movant included an exhibit with his motion – a letter from his counsel dated eleven days after

sentencing that he "did everything we could." [*Id*. at 11]. The government asserts that Movant's claim is "suspicious at the outset" because counsel made no such statement but suggested that an evidentiary hearing would be warranted since it is unclear whether counsel consulted with Movant about an appeal. [ECF No. 12]. Movant's claim is disingenuous, though he acknowledged in his Reply that counsel made no such statement to the court. [ECF No. 13]. In his Reply, Movant attempts to alter his claim: "counsel NEVER discussed ANY appeal options with Movant" and even if counsel told him it was not a good idea to file an appeal, such advice was incorrect. [ECF No. 13 at 2-3]. However, a reply brief is not the proper vehicle to present claims and facts. It is "[t]he motion [that] must: specify all the grounds for relief available to the moving party; [and] state the facts supporting each ground." Rule 2(b)(1), (2) of the Rules Governing Section 2255 Proceedings.

The law is clear that counsel's failure to file a direct appeal after being requested to do so by his client results in a *per se* constitutional violation of the movant's Sixth Amendment right to counsel, which entitles the movant to an appellate proceeding. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) ("we have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable"); *United States v. Stanton*, 2010 WL 3705964 (11th Cir. 2010) (quoting *Roe v. Flores-Ortega, supra.*).

There is a presumption of prejudice "with no further showing from the defendant of the merits of his underlying claims when the violation of the right to counsel rendered the proceeding presumptively unreliable or entirely nonexistent." *Roe v. Flores-Ortega*, 528 U.S. at 484. A defendant need not establish that his direct appeal would have been arguably meritorious; he need only show that his counsel's constitutionally deficient performance deprived him of an appeal he would have otherwise taken -- i.e., the defendant expressed to his attorney a desire to appeal. *Id.*; *see also Gomez-Diaz v. United States*, 433 F.3d 788, 792 (11th Cir. 2005).

However, here, Movant makes no claim that counsel ignored his request to file an appeal on his behalf. Rather, Movant claims counsel waived his right to appeal without consulting him.[2] As narrated above, the record contradicts his claim.

Even when a defendant has not specifically instructed his counsel to file an appeal, in order to determine whether counsel performed deficiently, a court must inquire into whether counsel in fact consulted with the defendant about an appeal.

---

[2] Movant is cautioned that arguments not raised by Movant before the magistrate judge cannot be raised for the first time in objections to the undersigned's Report. *See Starks v. United States*, 2010 U.S. Dist. LEXIS 110806, *7-9, 2010 WL 4192875 (S.D. Fla. 2010); *United States v. Cadieux*, 324 F. Supp. 2d 168, 170 (D.Me. 2004). "Parties must take before the magistrate [judge], 'not only their best shot but all of their shots.'" *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987) (quoting *Singh v. Superintending Sch. Comm.*, 593 F. Supp. 1315, 1318 (D.Me. 1984)). Thus, "[w]here a party raises an argument for the first time in an objection to a report and recommendation, the district court may exercise its discretion and decline to consider the argument." *Daniel v. Chase Bank USA, N.A.*, 650 F. Supp. 2d 1275, 1278 (N.D. Ga. 2009) (citing *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009). Here, if Movant attempts to raise a new claim or argument in support of this § 2255 motion, the Court should exercise its discretion and decline to address the newly-raised arguments.

*Roe v. Flores-Ortega*, 528 U.S. at 478. "If so, the attorney has only acted unreasonably if he has ignored the client's wishes to appeal the case . . . If not, the court must further inquire whether the attorney had an affirmative duty to consult." *Gomez-Diaz v. United States*, 433 F.3d 788, 791-92 (11th Cir. 2005) (citing *Roe v. Flores-Ortega*, 528 U.S. at 478). The duty to consult arises when either: (1) any rational defendant would want to appeal; or (2) the defendant reasonably demonstrated an interest in appealing. *Id*. (citing *Roe v. Flores-Ortega*, 528 U.S. at 480). "[T]o show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Roe v. Flores-Ortega*, 528 U.S. at 484.

Even if Movant's claim is that counsel "never" met with him to discuss an appeal, he fails to demonstrate that counsel had a duty to consult with him about an appeal. First, a rational defendant who received a sentence that was more than two years below the sentencing guidelines would not want to appeal. The case law supported the enhancements Movant received; thus, the two claims Movant believes he would have presented on appeal would have failed. Second, Movant provides no set of facts in his amended motion that suggest he reasonably demonstrated an interest to his counsel that he wanted to appeal his sentence.

To the extent that Movant attempts to rely on *Garza v. Idaho*, 139 S. Ct. 738 (2019), such reliance is misplaced. [CV-ECF No. 15]. *Garza* followed the reasoning of *Flores-Ortega*. In *Garza*, the Supreme Court answered the question of whether *Flores-Ortega* applies when the defendant signs an appellate waiver. The Court held that the presumption of prejudice "applies regardless of whether the defendant has signed an appeal waiver." *Garza v. Idaho*, 139 S. Ct. at 742. Here, Movant *did not* waive his right to appeal -- not by counsel and not by plea agreement. In fact, as narrated above, the court informed Movant that he *did* have the right to appeal. *Garza* is of no consequence here.

As the claim is controverted by the record or otherwise meritless, Movant cannot satisfy either prong of *Strickland*. Accordingly, Movant's claim fails and should be DENIED.

## VII.   Evidentiary Hearing

Although the government concedes that an evidentiary hearing should be held, it does not apply the proper standard for an evidentiary hearing. [ECF No. 12 at 1]. Movant has the burden of establishing the need for an evidentiary hearing; and he would only be entitled to a hearing if his allegations, if proved, would establish his right to collateral relief. *See Schriro v. Landrigan*, 550 U.S. 465, 473-75 (2007) (holding that if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary

hearing). *See also Townsend v. Sain*, 372 U.S. 293, 307 (1963); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (holding that § 2255 does not require that the district court hold an evidentiary hearing every time a Section 2255 petitioner simply asserts a claim of ineffective assistance of counsel, and stating: "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record."). Where, as here, the record contradicts Movant's claim that at the sentencing hearing counsel waived his right to appeal without first consulting with him, he is not entitled to an evidentiary hearing. His allegation is clearly refuted by the record.

Where, as here, there are absolutely no other facts offered in the motion to support Movant's claims, the Court does not need to conduct an evidentiary hearing.

## VIII.   Certificate of Appealability

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the

district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, in view of the entire record, the Court should deny a certificate of appealability. If Movant disagrees, he may so argue in any objections filed with the District Court Judge. *See* Rule 11(a), Rules Governing § 2255 Proceedings ("Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue.").

## IX.   Recommendations

Based on the foregoing, it is recommended that the motion to vacate be DENIED on the merits, that no certificate of appealability issue, and, that this case be CLOSED.

Objections to this report may be filed with the District Court Judge within fourteen days of receipt of a copy of the report. Failure to do so will bar a *de novo* determination by the District Court Judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn,* 474 U.S. 140, 149 (1985).

SIGNED this 1st day of July, 2020.

UNITED STATES MAGISTRATE JUDGE

cc:   Richard Karl Mork
      15816-104
      Duluth

21

Federal Prison Camp
Inmate Mail/Parcels
Post Office Box 1000
Duluth, MN 55814
PRO SE

Jessica Kahn Obenauf
U.S. Attorney's Office
99 NE 4th Street
Miami, FL
305-961-9317
Email: jessica.obenauf@usdoj.gov